UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY | CIVIL ACTION |
| VERSUS | NO. 13-4763 |
| THE CUMBERLAND INVESTMENT GROUP, LLC, DARRELL KELLY AND DEBORAH KELLY | SECTION "K" |

## ORDER AND OPINION

Before the Court is a Motion to Dismiss and/or Stay the Complaint for Declaratory Judgment brought by defendant The Cumberland Investment Group, LLC ("CIG") (Rec.Doc. No. 7) and a Motion to Dismiss brought by defendants Darrell Kelly and Deborah Kelly (Rec.Doc. No. 14). CIG moves this Court to dismiss the case for lack of subject matter jurisdiction on the grounds that the amount in controversy is insufficient for diversity jurisdiction under 28 U.S.C. § 1332 or, in the alternative, to dismiss or stay the case as a prudential matter because of a parallel state court proceeding. The Kellys move this Court to dismiss the case on the same prudential grounds. For the following reasons, the Court finds merit in the motions.

**I.      BACKGROUND**

Defendants Darrell Kelly and Deborah Kelly (the "Kellys") filed a lawsuit on February 7, 2013 in the Twenty-Fourth Judicial District Court for the Parish of Jefferson, State of Louisiana, for damages they allegedly sustained during a construction project to elevate their family residence. (Rec.Doc. No. 7-1, 10-3). The Kellys named, as defendants in the now-pending state court action, multiple parties involved in the project, including: Shadday Construction and Elevation, Inc. ("Shadday"), the general contractor; CIG, defendant herein, who was hired by

1

Shadday as a subcontractor to perform the elevation work on the Kellys' home; various individuals allegedly involved in the project; and Allstate, the Kellys' homeowners' insurer. (Rec.Doc. No. 9-1). While the Kellys did not name any of the defendants' insurers as parties to the lawsuit, the Kellys averred in their pleadings that CIG was "insured against losses for the improper performance of [its] contracts" (Rec.Doc. No. 9-1 at 6) and CIG, in its answer, admitted that it "maintained proper insurance at the time of the elevation of the [Kellys'] home" (Rec.Doc. No. 9-2 at 5).

     Plaintiff herein, Great American Insurance Company ("Great American"), provided defendant CIG with an insurance policy for the period of September 13, 2011 to September 13, 2012. (Rec.Doc. No. 1-2 at 2). CIG also alleges that it had an insurance policy with Century Surety Company ("Century") for the following twelve-month period from September 13, 2012 to September 13, 2013. (Rec.Doc. No. 7-1). In their state court petition, the Kellys aver:

> The contract [for elevation of the Kellys' home] was signed . . . on 22 June 2011; work did not begin until months later; work stopped in August 2012 when the house was a total loss; engineers began to inspect in October; Code enforcement condemned the house in November, and scheduled a City Council hearing for emergency demolition on 14 November 2012.

(Rec.Doc. No. 9-1 at 5). According to CIG, both Great American and Century have denied claims citing that the alleged damages occurred outside their respective policy periods. (Rec.Doc. No. 7-1 at 2). Presumably, Great American's position is that the damages, if any, were sustained after September 13, 2012, and Century's position is that they were sustained before that date. The alleged damages include the replacement cost of the Kellys' home, which is in excess of $160,000. (Rec.Doc. No. 9-7). Great American asserts that the coverage limit for the type of claim asserted is $100,000. (Rec.Doc. No. 9-5).

## II. LEGAL STANDARDS

### A. Subject Matter Jurisdiction

In declaratory judgment actions, the amount in controversy "is the value of the right to be protected or the extent of the injury to be prevented." *Leininger v. Leininger*, 705 F.2d 727, 729 (5th Cir. 1983) (*citing Texas Acorn v. Texas Area 5 Health Systems Agency, Inc.*, 559 F.2d 1019 (5th Cir. 1977)). Where the plaintiff in a declaratory judgment is an insurer seeking to deny coverage under an insurance policy, "the 'value of the right to be protected' is plaintiff's potential liability under that policy." *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) (*quoting Allstate Ins. Co. v. Hilbun*, 692 F. Supp. 698, 700 (S.D. Miss. 1988)). Where the amount in controversy is not facially apparent from the complaint, the court may review "summary judgment-type" evidence in order to determine the amount in controversy at the time of filing. *Id.* (*quoting Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir.1995)).

### B. Abstention

Great American filed its Complaint for Declaratory Judgment denying coverage under the policy pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. (Rec.Doc. No. 1). "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Agora Syndicate, Inc. v. Robinson Janitorial Specialists, Inc.*, 149 F.3d 371 (5th Cir.1998) (*quoting Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995)); *compare Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 652 (5th Cir. 2000) (*citing PPG Indus. Inc. v. Cont'l Oil Co.*, 478 F.2d 674, 679 (5th Cir. 1973)) ("When a party seeks *both injunctive and declaratory relief*, the appropriateness of abstention must be assessed according to

the doctrine of Colorado River.") (emphasis added). As such, "[i]t is well settled ... that the granting of a declaratory judgment rests in the sound discretion of the trial court exercised in [the] public interest." Wright, Miller & Kane, Federal Practice and Procedure, Civil 3d § 2759; *see also Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 604 (5th Cir.1983). The Supreme Court has held that the Declaratory Judgment Act "created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigations [; therefore,] ... a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial." *Wilton*, 515 U.S. at 288. Because Great American is seeking relief solely under the Declaratory Judgment Act and is not seeking injunctive relief, this Court finds that use of the standard articulated in *Brillhart v. Excess Insurance Company of America*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942) and reaffirmed in Wilton is proper.

  The *Brillhart/Wilton* standard instructs courts to consider whether the claims of all parties in interest can satisfactorily be adjudicated in a pending state court proceeding. *Wilton*, 515 U.S. at 283. Prior to the *Wilton* decision, the United States Court of Appeals for the Fifth Circuit, in *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994), identified seven non-exhaustive factors for a court to consider in deciding whether to abstain from adjudicating a declaratory judgment action: 1) whether there is a pending state action in which all of the matters in controversy may be fully litigated; 2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; 3) whether the plaintiff engaged in forum shopping in bringing the suit; 4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist; 5) whether the federal court is a convenient forum for the parties and witnesses; 6) whether retaining the lawsuit in federal court would serve the purposes of

judicial economy; and 7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.[1]

Notably, whether there is a pending state action in which all the matters in the controversy can be fully litigated is of paramount concern. *See Amer. Fidelity Ins. Co. v. Acadian Geophysical Services, Inc.*, 1997 WL 786233 (E.D. La. Dec 18, 1997). "It is well recognized that unnecessary interference with state court litigation should be avoided." Wright, Miller & Kane, Federal Practice and Procedure, Civil 3d § 2758.

## III. ANALYSIS

### A. Subject Matter Jurisdiction

For the purposes of diversity jurisdiction in a declaratory judgment action, the amount of controversy is the value of the right to be protected, which, in an insurance coverage case, is the insurer's potential liability under the policy. *See Greenberg*, 134 F.3d at 1253. Here, it is not "facially apparent" from plaintiff Great American's complaint that the amount in controversy exceeds the statutory minimum despite the plaintiff's bare assertion that it does.

The Court thus turns to other "summary judgment-type" evidence available to ascertain the value of the right Great American seeks to protect. It is apparent from the record that the Kellys allege that the replacement cost of their family residence exceeds $160,000. (Rec.Doc. No. 9-6). Furthermore, Great American admits that its potential liability for the type of claim being asserted by the Kellys against its policyholder is at least $100,000, according to the

---

[1] The first six factors were set forth the preceding year in *Travelers Ins. Co. v. Louisiana Farm Bureau Federation, Inc.* 996 F.2d 774, 777 (5th Cir.1993). These seven factors remain at the core of *Brillhart/Wilton* abstention analysis in the Fifth Circuit for declaratory judgment actions. *See Sherwin-Williams v. Holmes County*, 343 F.3d 383, 388-89 (5th Cir. 2003).

coverage limits of the policy. (Rec.Doc. No. 9-5). While an insurance policy coverage limit is not dispositive of the amount in controversy in declaratory judgment actions, *see Hartford Ins. Grp. v. Lou-Con Inc.*, 293 F.3d 908, 911-12 (5th Cir. 2002), the fact that the alleged damages and alleged coverage limit both exceed $75,000 sufficiently establishes that the statutory minimum amount in controversy requirement is satisfied.

### B.     Abstention

The task before the Court is to weigh each of the *Trejo* Factors with respect to the facts of this case to determine whether abstention is prudentially required.

As to the first *Trejo* factor, there is a case pending before the Twenty-Fourth Judicial District of Louisiana in Jefferson Parish in which the Kellys, CIG, and Great American are all parties. (Rec.Doc. No. 9). The subject of the litigation involves claims for damages to the Kellys' family residence during a residential elevation project undertaken by Shadday, as the general contractor, and CIG, as a subcontractor. The Kellys allege in their state-court petition that the elevation project "stopped in August 2012 when the house was a total loss [and] Code Enforcement condemned the house in November [of 2012]." (Rec.Doc. No. 9-1 at 5). CIG, in its answer, denied these factual allegations. Great American denied coverage for liability to CIG for all damages alleged by the Kellys because "among other reasons . . . [the damages] did not occur during the effective dates of the policy." (Rec.Doc. No. 1). CIG's insurance policy with Great American expired on September 13, 2012. (Rec.Doc. No. 1-2 at 2). CIG avers that it had an insurance policy with Century that began on September 13, 2012 and that Century also denied coverage on the basis that the damages occurred outside of the effective dates of the Century policy. (Rec.Doc. No. 7-1 at 2). Thus, multiple issues of material fact are disputed, including

(1) whether the Kellys sustained any recoverable damages, and (2) if so, when those damages were actually sustained to trigger coverage.  That factual finding is necessary to resolve the issue of coverage and is better left to the state court.

As to the second *Trejo* factor, Great American was on notice as early as November 29, 2012 when it received an email from the Kellys' attorney informing them of alleged damages sustained by the Kellys, allegations of fault, and an intent to make a formal demand upon further investigation.  (Rec.Doc. No. 9-6).  Great American confirmed receipt of a claim notice in a letter to CIG dated February 6, 2013.  (Rec.Doc. No. 10-3).  The Kellys' state court petition specifically avers that CIG was insured against losses for the improper performance of their contracts (Rec.Doc. No. 9-1 at 6) and CIG, in its answer, admitted that it "maintained proper insurance at the time of the elevation of the [Kellys'] home" (Rec.Doc. No. 9-2 at 5).  Clearly, Great American was aware the issue of its insurance coverage of CIG would be at issue in the pending state court proceeding.  Thus, it can be assumed that Great American filed for Declaratory Judgment on June 10, 2013 in anticipation of becoming a party to that pending state court action.  Indeed, a third-party claim was filed against Great American on July 22, 2013 by the general contractor (Rec.Doc. No. 9 at 3) and CIG is not procedurally barred from making its own third-party claim against Great American, which it has indicated in briefing that it may still do (Rec.Doc. No. 10-2 at 2-3).

As to the third *Trejo* factor, Great American fails to offer a legitimate reason for its attempt to select the federal forum to litigate the issues pertaining to its coverage of CIG.  There are "legitimate and improper reasons for forum selection" with the former being permissible and the latter constituting "abusive 'forum shopping.'"  *Sherwin-Williams v. Holmes Cnty*, 343 F.3d

383, 391 (5th Cir. 2003). The plaintiff in *Sherwin-Williams* filed its declaratory judgment complaint in federal court in order to resolve certain issues of its liability for lead paint that was likely to be at issue in multiple lawsuits filed in various state courts. *Id.* at 398-99. The Fifth Circuit held that the plaintiff was not engaged in impermissible forum shopping because it was seeking to avoid litigating multiple lawsuits in multiple courts rather than merely change forums for one lawsuit. *Id.* at 400. Likewise, in *Travelers Ins. Co. v. Louisiana Farm Bureau Federation, Inc.*, the Fifth Circuit held that the plaintiff sought only to resolve legal issues surrounding its coverage of seventeen Farm Bureau members in a single forum rather than in as many as seventeen different state court actions and, therefore, was consistent with the purpose of the Declaratory Judgment Act (*i.e.* seeking to avoid a multiplicity of lawsuits and forums). 996 F.2d 774, 777-79 (5th Cir. 1993). Unlike the plaintiffs in *Sherwin-Williams* and *Travelers*, who sought to avoid litigating the same issues in multiple state court actions, Great American makes no contention that other potential plaintiffs, similarly situated to the Kellys, are likely to file suit raising the same issues that Great American asks this Court to resolve. Therefore, this Court finds that Great American is engaged in impermissible forum shopping. Great American can raise an affirmative defense of non-coverage in the pending state court action, but the Declaratory Judgment Act is not to be used to litigate a possible state-court affirmative defense in federal court. *See Int'l Ass'n of Entrepreneurs of Amer. v. Angoff*, 58 F.3d 1266 (8th Cir. 1995).

As to the remaining *Trejo* Factors, the fourth and sixth weigh in favor of abstention while the fifth is neutral and the seventh is inapplicable here. As to the fourth factor, possible inequities exist in allowing Great American to bring this action, because a decision of this Court

on the coverage issue will have a preclusive effect on any state court action. As to the fifth factor, the federal forum, located in Orleans Parish, is no more convenient than the state forum, located in Jefferson Parish. As to the sixth factor, there are issues of judicial economy as the resolution of the coverage issues Great American presents would necessarily require this Court to duplicate the judicial efforts of the state court in the findings of fact related to the underlying claim upon which Great American has denied coverage.

For these reasons, the Court finds that the exercise of jurisdiction here would result in a gratuitous interference with the state court proceeding; therefore, applying the standard set forth in *Brillhart/Wilton*, this Court will abstain from exercising jurisdiction over this matter. Accordingly,

**IT IS ORDERED** that defendant The Cumberland Investment Group, LLC's Motion to Dismiss and/or Stay the Complaint for Declaratory Judgment (Rec.Doc. No. 7) and defendants Darrell Kelly's and Deborah Kelly's Motion to Dismiss [and/or Stay][2] (Rec.Doc. No. 14) are **GRANTED**.

---

[2] This Court construes the Kellys' "Motion to Dismiss under the *Brillhart/Wilton* Abstention Doctrine" to be a motion to dismiss and/or stay the proceedings and thus grants the motion to stay.

**IT IS FURTHER ORDERED** that these proceedings are hereby **STAYED** and **STATISTICALLY CLOSED pending** the resolution of the **state court** proceeding. When those proceedings are completed, any party, if it chooses, may move the Court to reopen the case.

New Orleans, Louisiana, this 23rd day of October, 2013

                                            **STANWOOD R. DUVAL, JR.**
                               **UNITED STATES DISTRICT COURT JUDGE**